18, 13, 19 Walker Brothers Beach, which is current Randy. Morning, Your Honor. Morning. It pleases the Court, Your Honor, that I have planned to come to Walker Brothers. I'd like to reserve five minutes before we vote. You have it. Thank you. The primary issue presented in this appeal is whether or not a parking lot owned by a completely separate company, Ace Hardware, was provided by Walker Brothers for use by its employees. It's a balanced position. The parking lot fully operated and maintained by Ace Hardware was not offered by the premises for the purposes of the parking lot exception to the general premises. All right. The evidence would have to be undisputed that the employer did not require its employees to park at Ace, did they? They did not require the employees to park there. There's testimony from multiple sources, including Mr. Weiss, the owner of Ace Hardware, that Walker Brothers employees did not require their employees to park there. Nevertheless, it was a customary and permitted activity. I mean, people were not parking there without Ace's permission, were they? I think that goes to the main point in our appeal, and if you look at this, there was a discussion from the Commission about this. Well, answer my question. Were they just trespassing there, or was Ace aware of it and permitted them to park there? Well, Ace Hardware did allow for Walker Brothers employees to park in an area of the block. Yes. During certain times of the year. All right. So it was a customary and permitted activity that both sides, both companies agreed to. It was permitted, and I think I would be careful using the first stage of the word agreements. I think that these are paid people. They do not understand that there's an agreement or arrangement. Well, who got approval for the employees to park there? I believe, and I don't think anybody in this case is really sure who arranged for there to be this. So there's no evidence there at all that the owner. No, I'm really sure. But I will acknowledge that there is this arrangement that Walker Brothers, of course, are allowed to park there. But I think that the question would be. . . Well, back to my original question. Who made the arrangement? I think the arrangement was between Walker Brothers and Ace Hardware. So you're going to admit that, that the arrangement was established between the employer and Ace Hardware? Well, I think people were unsure as to when this arrangement came into being. That's when, but it isn't a question of when. It's a question of just what I asked. It's a formal arrangement. So you concede there was an arrangement. I can't dispute what is in the testimony of the record from. . . All right. We're spending a lot of time, I think, on an unnecessary point. Would you agree? Let's move on. Thank you. It's essential. The point that I'm trying to make in this case is that this arrangement does not mean that the employer provided the lot for use by its employees. And the commission relied on the deployer's case, which I think was Ms. Foote's. And in the deployer's case, in that case, the Supreme Court and the public ownership was the material that the employer provided off of Foote's. And in that case, it's assumed that they had a common plot. That they were determining whether or not the employer provided the lot. I mean, whether or not it was based on the fact that the employer had it. So they used the word provided, right? Right. And the subsequent case law. . . And what does that mean? So provided, I guess, would be a term of art. So the subsequent case law has elaborated on when an employer provides a lot for use by its employees. And I think the point is here is that. . . So we're under de novo review. I would argue, yes, that the commissioners made a legal error by relying on the employer's case, which was not applicable to the facts of this case. Where whether or not a lot was provided or not was a dispute. And I believe in the super case and the employer's case, it was. . . Isn't it a question of whether the facts of this arrangement constitute a provision by the employer? And that's my second point. I believe that when you look at this case under the correct legal analysis, in the case of Maxens, Illinois, Chandler, and further this Court's decision in Joyner. . . The opposite result is. . . In what regard is the opposite result clearly apparent? So. . . Based on what? Well, the. . . I would assert that by saying that the issue. . . One of the main issues is whether or not the employer provides a lot of disobedient control. And the facts of this case do not establish that a lot of the providers exercised disobedient or control over the ACE hardware. Let me stop you right there. Is that a legal requirement or is that simply what the Court's quite significant factor as a part of the analysis? I believe that the Court's called it a significant factor. So, in Maxens, the decisive issue in Parkamont cases is usually whether or not a lot is owned by the employer, controlled by the employer, or the right required by the employer. And they actually expressly differentiated the Hoyas case by saying that the Hoyas case in Illinois. . . Was involved. . . Parkamont owned or controlled by the employers. And there were lots regularly used by the employers. So, I would argue under the facts of this case. What was that last thing that you kind of. . . What did you say? Used. . . I don't want to misquote the court. Used by the. . . Used by the employer with the honors consent. And that was done here. It was used by the employer with the honors consent. The owner of ACE hardware. But I think it's important to note here that. . . That really, this is not Walker Brothers property. This is not Walker Brothers. I mean, they did not control this lot whatsoever. They did not own the lot. ACE hardware was solely responsible for maintaining the lot. ACE arranged for and paid for snow removal. And ACE was solely responsible for conditions on the ACE hardware lot. Walker Brothers did not have any legal or financial interest whatsoever in the lot itself. There was no compensation exchange. This is something in reference to the joint case. There was no compensation exchange whatsoever. ACE hardware and Walker Brothers for the employee's use of the lot. And the testimony establishes that they are not required to park in the lot. In fact, there were a half a dozen other places where employees could park. And they frequently did. I think Mr. Swan has testified that they normally park on side streets. They were parking lot behind the Hyundai dealership. And when they hit the third bank, the shop was in the next direction. There were a bunch of other places where employees could park. They were allowed to park in other areas, just like they were allowed to park in the ACE hardware lot. There was signage that stated a portion of the lot for ACE hardware employees. And, in fact, not many of these spots were available to produce that general property. If these lots were available. There was no signage? I thought there was only a certain number of parking spots that Rice agreed. There was a reference that there was a designated area in the lot which has a parking lot. This was not specifically reserved. There was no sign that said Mr. Ramsey was required to park in this spot or that spot. If a customer or employee who takes hardware parks in the spot, all of the spots designated, I guess, that they were allowed to park in, then no other arrangements are made. So, if this lot is full as it is, specifically for a large portion of the year, So, if an employer contacts and reaches an agreement with an adjacent business or the employer's employees to park another lot with the consent of the adjacent business, and there's some, you know, limitations on who can park there, this is an agreement entered into between both adjacent businesses that's meaningless under the law, according to you. And I would say that the point here is that this is not Walker Builders property. This is not their property. They do not. They have to own it? I'd say there is to be more than just allowing somebody to park there. But isn't there, and I just want to not lose this point that Justice Hudson, I think, was alluding to, and that is that there was a general understanding that the employees knew what portion of the ACE parking lot they were allowed to park at, and they were told that somehow by their employer, so that they knew if there was parking there, if it was that certain portion of the ACE lot that they could park. But they could also park in other places as well. So they're not requiring any employees to park. Well, then how can that be detested? We have a plethora of cases where the employees are designated to park in a public lot. The employer provides it. Employees are not legally obligated to park in the lot designated in any case by an employer, are they? But in these cases that we're talking about where there's a designated, there's usually some exchange of compensation or some other way that the employer itself is somehow financially responsible for the conditions of the lot. Right. Yeah. But there's an arrangement. I think you can see that there's an arrangement. They call it an arrangement. There wasn't an arrangement made. So direction and control is what you're saying is necessary? Yes, sir. The conjunctive, both of them. Dominion and control. Some aspect of control. Okay, dominion and control. So direction is not sufficient, right? I don't even think that they are really directing their employees to park there. Well, don't they have in the workroom a sign or something that informs the employees? There was some discussion about that, although I don't think that the sign was allowed into evidence at trial. I believe it was taken off. There was some discussion of the sign, but there were objections to discussions of what was on the sign and not on the sign. You've been alluding to the fact that the employees are not required to park in the ACE parking lot, and that's obviously not disputed either. But when you have a situation where the employer designates a parking facility for the employees and they choose not to park in there, it's still up to them, isn't it? Why the fact that they choose not, they don't have to park there, is determinative of anything in this case? I think that's something that the courts have referenced as a factor to look at, especially with the decision in the Joyner case, is whether or not the employees were actually required to park, or if that came to be a choice. So that's the only place that they could park. I think that is an important point to make here, which is that the not-so-vigilant admission in this decision really is there. Of course, it adds, with all respects to the admission, that employees were not required to park in any location at all, and it was up to them really where to park. There are a series of cases that we've decided where we seem to have interjected into the case as an obligation on the part of the employer to maintain the lot that's provided as a condition of liability under the exception. It was the ruling in Phil v. The Industrial Commission. It also appears to be the rule in Morris Harvey. And it seems to stem from the rationale that the employer, under those circumstances, was required to maintain the lot vis-à-vis plow it and such. Now, is that actually a condition imposed as part of the parking lot exception, or should it be? I don't think it should be, especially in this case, where the law firms had absolutely no right to be on the lot, no ability to maintain the lot. Well, so you're saying that maintenance should be a condition for the application of the parking lot exception? Being able to influence the maintenance of the lot or somehow affect the conditions of the lot, I think would be relevant to whether or not the employer should be on the lot. Wasn't that what Joyner and Doyle from the Supreme Court say? You quoted it. The employer's control or dominion over the parking lot is a significant factor. It doesn't say it's a required element, does it? It does not. If it did, it would be clear. If it was required to maintain, the employer maintained dominion and control, then you wouldn't have it here. If it's a factor, it's part of the overall analysis, correct? Right. And it is a, as the court said, a significant factor, and it's something that the commission did not, really did not consider their decision. There's no reference in the commission's decision to dominion or control, being able to influence the conditions of the lot. Certainly, it would be contrary, considering these original decisions, whether there was control over the lot. And I note also that one of the commissioners dissented, and agreed with our original decision on that issue. So, I think there's no further questions on that issue. I'll move on very quickly. I acknowledge that the primary issue in this case is whether they divided the lot. We've also argued that the commission failed to consider whether Mr. Ramsey was able to increase Mr. Ramsey. Do you have any cases, cases decided by this division, that suggests that the natural accumulation doctrine is applicable to workers' compensation cases? I argue that the closest case would be the Wal-Mart stores case decided by this court. That's where lots are open to the general public. Employees, I'm sure, there are increased requirements. And I believe in that case, actually, there was a specifically designated portion of the Wal-Mart's holding only one for the employees. And that is also able to be occupied by the general public. That case was denied based on the fact that... Is it the case where the claimant was picked up by some friend of hers in the parking lot? Correct. She wasn't parking the lot. So how does the parking lot rule apply? She was walking across the lot to be picked up by a friend of hers. She wasn't injured when she slipped and fell after she parked in the lot. So the parking lot exception doesn't apply. She wasn't parking. I argue that there's no difference between someone picking you up to go to a front work apartment lot and driving herself to a front work apartment. I mean, whether or not the case is... Well, you're suggesting then that, to follow your reasoning, if the Wal-Mart case was applicable, not applicable, that we couldn't hold someone liable for injuries on sidewalks leading to the store because of ice and snow under a natural accumulation theory. I think my point is to say that the grantee does not have any increased risk versus any member of the general public who was available to... Well, then your suggestion would be the natural accumulation doctrine applies, period, to industrial commission cases, and if you slip and fall on ice and snow, it's too bad. I think there might be some situations when you have something like in the general case where you're departing a lot, but that's not what you have here in this case. Why would a restricted parking lot be different if it was a natural accumulation of ice and snow? Because the employee is exposed to the risk greater than the general public. Are you talking about a restricted parking lot where the employees are forced to park in that lot and not allowed to park anywhere else? Ice, yes. That would probably be the only way you could get the argument, because if it was a choice to park in that lot but it wasn't, then you're suggesting the natural accumulation doctrine takes these cases, although compensability. If you'll have time to reply, we'll let you go over a little bit. Okay. Counsel, you may respond. Thank you, Your Honor. Please report, counsel. I'd like to go over and touch on a few of these topics.  I should. I'm sorry, Your Honor. I have a question on De Hoyos' misplaced, and I don't believe anything could be close to being further from the truth. De Hoyos, as the panel knows, is a Supreme Court case in which it said specifically that an employer provides a lot to its employees to park. The employer would be any accident that occurred on that lot, the accident would be commensurate. Okay. So how did the employer provide? That seems to be the language in De Hoyos, and that seems to be the answer to this case. This specific case was a handshake agreement between the owner of Walker Brothers or the manager, I believe it's unclear, and the owner of Ace Hardware. It was in existence for years in which they both agreed that Ace Hardware would provide routine spots along the south border of the parking lot for Walker Brothers employees to park if they were available. But can we stop you right there, because every word is important. So you, by definition, you're saying that within the ambit of the term provide is the employees making an arrangement with the consent of Ace that is, in essence, providing the parking lot. Correct. Because they didn't own the parking lot. They did not. So your definition within that definition is making the arrangement for the employees to park there is, in the legal sense, providing the lot. That's what you're arguing. That's exactly right. And everything that counsel said in the argument is true. Okay. So where did this language, dominion, and control come from? Well, I think there were cases subsequent to De Hoyos where a certain force started to chisel away the parking lot exception and chisel away De Hoyos. Whether or not those were correct, I would take issue with. I believe that there were some cases that my opponent cited in his brief in which the fact patterns were different than the fact patterns that we see here. Specifically, I believe some of the cases that my opponent cited to as an exception, and I believe some of the cases that he argued with right before I did, that injury happened on the parking lot that was not ordinarily used by the employees. Whereas in this case, this lot that was used to park Ace Hardware was used commonly by the employees. All right. So how do we reconcile all of this? Should dominion and control over the lot be a required element, or should it only be a significant factor? There seems to be some emerging conflict between the two legal theories. So what is the law currently in Illinois? Does the employer have to exercise dominion and control over the other lot, or suggest, quote-unquote, a significant factor in the analysis? What is it in your opinion? In my opinion, the law in Illinois is that it only needs to be provided by it. Control, dominion, exercise, convenience are all factors that can be looked at and can be used to determine whether or not. It would occur to me that before you hold a party liable for a condition on premises, that the party has to have some ability to control the condition. And in this particular case, this employer had no such power. And we have two cases, Morris Harvey and Ville, decided by this court, that both require maintenance and provision of the lot. DeHoyes is a very interesting case, but you can't tell from the opinion. It appears as if the entire lot was controlled by the employer. The employee testified in DeHoyes that the lot belonged to his employer. It was later determined that no one knew whether it was owned by him, and the court said it didn't make any difference. But it appears as if the entire lot was provided for the employees. In Morris Harvey and Ville, both of them suggested, Morris Harvey language said, the relevant inquiry is whether the employer maintains and provides the lot. And in Ville, the court turned around and talked about control over the lot. The employee is injured in the parking lot, provided by and under the control of the employer. If we don't require maintenance and or control, how does the employer protect the employee? He can't fix the lot. He has no power to control it. And so you want to hold him liable? So then that means no good deed goes unpunished. So we shouldn't try to help our employees by finding off-street parking for them, so they don't have to walk blocks to come to work. And because we may be held liable because Walmart didn't shovel its lot, because we had permission to park there. Well, I do believe that no good deed goes unpunished in this case, and that's exactly what this act is for, the workers' compensation act. It is to benefit the worker that's injured, such in this case in which he was provided a parking lot by his employer. But was he provided a parking lot, or was it only that the employer secured the acquiescence of Ace Hardware that people other than Ace customers, specifically the employees of this employee, could park on Ace property? Is that the provision of parking? Could they require Ace to allow him to park there? No. No. No. So no one could force Ace to let him park there. So what did the employer provide? Well, the employer gave that as an option to park. Well, the employer couldn't give it as an option. He didn't own it, and he didn't control it. He went to Ace, and Ace merely said, it's okay, your people can park there. And so he merely secured the acquiescence of Ace for these employers to park there, but he didn't provide them with a parking lot. No, he provided them with an option to park there, Your Honor. Just as my counsel said, there were other options on that day too, but the only agreement in place on that day with any risk-free product on a private lot was that Ace Hardware, the Hyundai Car Dealership, the fifth group rank, sure, wanted those employees to park there, but they ran the risk of being taken into custody. Can I ask you a question about the real-world consequences of these decisions? And I'm thinking this thing through. So if the employer can't maintain control and dominion over a lot, and it's going to be responsible for it, and we announce this decision, are employers going to say, we're not helping anybody, we're not making any arrangements for our employees, because we're going to get tagged with responsibility over something we have absolutely no control over? Wouldn't that be a deterrent in the future for employers to do what Rice did here? Yes, it would. It would. In fact, the only way employers could protect themselves is if they didn't have that agreement in place with Ace Hardware. Well, that's going to be great for all these employees that are used to parking near the point, because they're going to say, we don't want to get stuck, as he's saying, with the bill here, and we have no ability to control this whatsoever. That's great for them. So you win the battle here, but you lose the war. I can understand the rationale of applying Deloyer's to circumstances where the employer controls the entire lot and provides it for his employees, and in addition to that, has to maintain it. In Sutter, that was a situation where the lease specifically provided that the landlord would provide a certain number of spaces for state employees, and this was a lone servant to the state, and they said there was liability there, because it was specifically provided a certain number of spaces designated for the employees. But I have difficulty with the concept of holding an employer responsible for an injury on property that he has no control over whatsoever. Well, what I would say to you with that, Your Honor, is that in this specific arrangement, which is not mentioned in my brief, is that Walker Brothers is gaining an economic incentive by providing incentive to make working at Walker Brothers more attractive, that there's work closer to the facility and they don't have to park on the street. Well, we don't know that it's closer to the facility, because there's off-street parking here they could use, too. And we don't know how close that was. It was across the street. But the ACE parking lot didn't have any reserved spots for these employees, so they couldn't guarantee they could park there. Well, not reserved in the sense that no one else could park there, but there were designated spots where, if they were available, Walker Brothers employees could park there. Well, what they said, there were spots they couldn't park in, I think is what it was. Yeah. I know, I believe the record did state that there were 13 spots in the south part of the ACE parking lot where, if they were available, Walker Brothers employees could park there. And they couldn't park there between Thanksgiving and Christmas. They couldn't park anywhere between that period of time. I believe so. Okay. So, my contention is that the way it was instilled in Walker, that there was an agreement in place, the parking lot was provided by Walker Brothers to its employees, and that, as Justice Hoffman alluded to, Souter, which three justices, Holtridge, Hudson, and Hoffman, all concurred in the amendment's decision, followed De Hoyos to 18. And it's my argument that De Hoyos is still good law today. I mean, is it inconsistent to say De Hoyos is good law, but the employer still has to maintain some ability to control or maintain? Why wouldn't it be good law? Because in De Hoyos, we don't know from De Hoyos how much the employer controlled that lot. What we do know is the employee thought that the lot was owned by his employer. He testified to it. But we don't, it appears to me from De Hoyos, that the employer in that case made use of and occupied the entire parking lot. Parked in a parking lot where other employees' cars were parked, and the testimony of the claimant further reveals that the parking lot was provided by the employer and regularly used by employee. He testified that the parking lot was owned by his employer and that he had been parking in the lot for 12 years. Did not know as a matter of law whether, matter of fact, whether the employer actually owned the lot or not. So it appears to me in De Hoyos, this was an entire parking lot that was provided that the employer may not have owned. And that's a little bit different than finding some other merchant and saying, hey, can my employees park in your lot if your lot's not occupied? I understand your point, Your Honor, but the way that the facts of this case carry out, once that parking lot is provided by the employer to the employee, regardless of ownership, regardless of maintenance, regardless of anything. See, I think I disagree with you on the fact of whether it provided it. Okay.  But I think that's different than he provided the lot for them. You have until 10.03. Okay. You've got two minutes. My opponent also alluded to whether or not there was an increased harm, or an increased harm to my client rather than to the general public. I'd like the court to at least look at the fact that my client parked there before the parking lot was opened to the general public, before sunrise, and therefore there was an increased harm to that rather than to the general public. If there are any other questions, thank you for your time. Thank you, counsel. Well, you have five minutes. I think whether or not Walker Brothers had the ability to maintain and control the lot in his case, and I think the parking lot exception cases exist to expand the employer's premises. These cases are just not compensable unless this is actually the employer's premises. So you're really saying you want us to say that the Hoyas provide, providing the provides, has to be the minion in control. There has to be a minion in control, yes. To establish that it's been provided. Correct. Isn't that what we said in Morris Harvey? The relevant inquiry is whether the employer maintains and controls the lot. Furnishes and maintains, maintains and controls. Provides and maintains. Provides and maintains. It's more than just it's available. There has to be some aspect of control that would influence the conditions on the parking lot, and that does not exist in this case. Let me ask you this so we're not going to be in conflict with the Illinois Supreme Court. Under Doyle v. The Industrial Commission, 95 Illinois 2nd 103 holds the employer's control over the parking lot is a significant factor. Doyle from the Supreme Court doesn't say it's a required factor. So wouldn't we be taking it upon ourselves to contradict Doyle? How do you respond to that allegation? I disagree based on the Supreme Court's own language in cases such as Illinois. Is there a difference between significant factor and relevant inquiry? I think that it should be relevant, absolutely. I mean, is there a difference between being a significant factor and being a relevant inquiry? I don't think so. I don't think there would be, but whether or not it's a requirement or a factor, a relevant inquiry is a different matter. Does this element have to be proven? It's different than whether it's consideration. I argue that it should be a factor. When Morris Harvey, that's exactly what we said. A relevant inquiry is whether the employer maintains and provides the lot for the employer. We decided that in, I don't know what year it was. Well, does that make it an element or is that a factor? Yeah, yeah. Relevant inquiry. I mean, yeah. An inquiry is not an element. A factor, you're going to argue it should be a factor. An inquiry is an element, a factor. I think that it should be the main consideration in these cases, and it's just not something that the commission looked at at all. It doesn't know what it means. They just looked at the royals and said, with all due respect to the commission, that there is this informal arrangement. So that's it. Well, now that we're talking about practical considerations that was brought up, is there an inherent difference between the maintaining of a lot for a business invitee and a lot that an employer would maintain for his employees? Exactly. The ability to influence the conditions on the lot. The mechanism for how the employee was able to control that. And it just doesn't exist. I think a strong argument can be made that in the case of workers' compensation cases, the obligation of the employer to maintain the parking lot in a safe condition is absolute. It's not based on his negligence. So that's why I kind of disagree with you on the natural accumulation doctrine. I think it's irrelevant to parking lot cases vis-a-vis employee parking lots. I think the liability is absolute under the Workers' Compensation Act. Under negligence theories on business invitees, it's not absolute. There's still a negligence factor required. My point is it's just the lot. It's not that they have an obligation. They actually cannot in this case. It is hard workers' duty to maintain. It's not hard workers' duty to maintain the lot. And I argue that in that aspect, it's really contributory in these cases. Because how can you say that this is the employer's premises? I suppose to put it in the general. If it is held that a certain element is a relevant factor in determining liability, it occurs to me that the total absence of the relevant factor is indicative of no liability. All right. Any other questions? Thank you, counsel, both for your arguments on this matter. It will be taken under advisement. Written disposition shall issue.